517 So.2d 513 (1987)
Virginia WARD
v.
Juanita W. FOSTER.
No. 57020.
Supreme Court of Mississippi.
November 4, 1987.
Rehearing Denied January 13, 1988.
C.R. McRae, Margaret P. Ellis, Pascagoula, for appellant.
Ernest R. Schroeder, Carolyn Dohn, Bryan, Nelson, Allen, Schroeder & Backstrom, Pascagoula, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
Virginia M. Ward appeals from a final judgment in her favor against Juanita W. Foster for $3,500, later reduced by court order on a Miss.R.Civ.P. Rule 60(b)(5) motion to $1,808.50. We find her assignments of error unpersuasive and affirm.

FACTS
On January 15, 1982, Ward was driving south and Foster was driving north on Highway 513 in Jackson County. Foster made a left turn in front of Ward at the Interstate 10 intersection, resulting in a collision and personal injuries to Ward. Foster had liability insurance coverage with Allstate Insurance Company.
On April 27, 1984, Ward filed a complaint against Foster and Allstate. The circuit court dismissed the suit against Allstate.
The jury returned a verdict of $3,500 and final judgment was rendered in favor of Ward for this amount on May 28, 1985. Thereafter, on June 28, Foster moved pursuant to Mississippi Rule of Civil Procedure (MRCP) 60(b)(5) for relief from the judgment because of monies previously paid Ward by Allstate. At the hearing on this motion, it developed that Allstate had previously paid Ward $1,691.50 on her claim against Foster. In an order dated October 31, 1985, the circuit court reduced the verdict of the jury and the judgment thereon to $1,808.50.
Ward appealed from the original and amended judgment.
As necessary, we will cite and review the pertinent portions of the record in discussion of the assignments.

*514 LAW

DISMISSAL OF SUIT AGAINST ALLSTATE
Ward's claim that this was error is without merit. Westmoreland v. Raper and Commercial Union Insurance Companies, 511 So.2d 884 (Miss. 1987).

INFERENCE FROM PLAINTIFF'S FAILURE TO CALL A TREATING PHYSICIAN AS A WITNESS
Following trial, by Instruction D-14-A, the court instructed the jury that the failure of Ward to call certain doctors, who had treated her for her injuries, as trial witnesses authorized the jury to infer that the doctors' testimony would have been unfavorable to the plaintiff.
Ward does not contend that the instruction misstated the law, but argues that Foster was not entitled to any such instruction, because the medical privilege was waived as to these doctors. The record does not support Ward's argument.
On July 27, 1984, Foster propounded interrogatories to Ward, which were answered on November 15. Interrogatories 9, 13 and 19, and their answers, as well as her answer to 23, follow:

Interrogatory No. 9: Since the date of the accident herein in question, please state in specific detail if any doctor has rendered an opinion giving you any disability, please state what doctor, on what date, type of disability and reasons therefor.

Answer: I am not aware of any opinions. Attorney objects: this is hearsay and medical information.

Interrogatory No. 13: Do you waive the medical privilege as to all physicians, or nurses, or any hospital at which you have been confined? If you answer to this question is affirmative, please execute the attached waivers of medical privilege and return it with your answers to interrogatories.

Answer: My attorney advises this is not a proper waiver of medical information; however, when the proper form is presented, it will be considered at that time.

Interrogatory No. 19: In regard to payment of any medical, doctor, hospital or drug expenses relating to any injuries received in this accident, state: (a) Name and address of the person, firm, company or governmental agency making such payments; (b) an itemization of such payments and (c) the basis for such payments.

Answer: Attorney objects as to collateral source.

Interrogatory No. 23: The doctors who treated me will probably testify pertaining to my injuries.
On January 22, 1985, defense counsel wrote plaintiff's counsel about her medical bills, treatment and waiver of the medical privilege. Plaintiff's counsel responded by letter of January 23, 1985, the second paragraph of which follows:
If you would advise us as to what doctors you care to talk to, this writer will be happy to consider them on individual basis. This writer will waive medical as to Dr. LaCour, Dr. Buckley and Dr. Longnecker; however the writer request [sic] that he be present, or a representative of his office be present whenever any conversation is made with the physicians. The other doctors will be considered upon proper request.
Defense counsel's response to this letter was acknowledged confusion. Plaintiff's counsel was asked: "has the medical privilege been waived or has it not? We're enclosing a copy of a medical waiver which we request your client sign and return." Neither the waiver nor any substitute was forwarded.
On March 15, 1985, Ward was deposed. A copy of a portion of this deposition follows:
DEPOSITION OF APPELLANT, WARD, MARCH 15, 1985:[1]
Q. (to Appellant) Did he (Dr. Enger) release you from his care?

*515 Mr. McRae: That calls for a conversation between him, and I think it would best come from him ... (p. 44, Plaintiff's deposition)
By Mrs. Dohn: (p. 45)
Q. May we go talk to Dr. Enger?
Mr. McRae: When you get ready to take my deposition please notice it and we'll go from there.
By Ms. Dohn:
Q. May we talk to Dr. Enger?
Mr. McRae: She would have to consult with her attorney on that.
By Ms. Dohn:
Q. Mrs. Ward?
A. I'll have to consult with my attorney.
Q. You are aware of the fact that we have given Mr. McRae authorizations for the release of information and waiver of the medical privilege?
Mr. McRae: That would be a conversation between she and I and, to be quite frank with you, I didn't talk to her on that point ... (p. 46)
Q. Did Dr. McCloskey tell you what he thought was wrong with you? (p. 50) Mr. McRae: If he did you don't have to tell her.
A. I don't remember. He just said ...
Mr. McRae: (Interposing) Don't go into what he said. That would best come from the doctor, not her.
By Ms. Dohn:
Q. May we talk to Dr. McCloskey about his treatment of you?
Mr. McRae: Whenever you want to come through me about that you may but you already have his report, Mrs. Dohn. (p. 51)
By Ms. Dohn:
Q. So you are waiving the medical privilege? Is that right?
Mr. McRae: Mrs. Dohn, we've already discussed that, as far as the medical privilege. We've already written that letter and we've already tried to settle the case and you all didn't want to do it. So that's fine. We tried.
By Ms. Dohn:
Q. Are you aware of the fact that we wrote Mr. McRae a letter asking him if he had waived the medical privilege and enclosed a copy of a waiver in that letter for you to sign?
Mr. McRae: Well, whatever she's aware of would be a communication between she and I, and she's not to answer that.
By Ms. Dohn:
Q. Are you going to refuse to answer that question?
Mr. McRae: She will be refusing to answer it based on my instructions.
By Ms. Dohn: (p. 58)
Q. What did Dr. Longnecker tell you was wrong?
Mr. McRae: Never mind. You don't have to answer that. That would best come from the doctor.
By Ms. Dohn:
Q. You are not going to answer what the doctor told you he thought was wrong?
Mr. McRae: That's correct, she is not, based on her attorney's instructions. That would best come from the doctor, ma'am, as you well know. (p. 59)
By Ms. Dohn:
Q. Can we speak to Dr. Longnecker?
Mr. McRae: Come through me.
By Ms. Dohn:
Q. Mrs. Ward?
Mr. McRae: Mrs. Dohn, she's answered the question through me. You had our letter back in January concerning Dr. Longnecker and you responded accordingly. That's the response. She will not answer you any further than I've already responded.
It is thus clear that Ward through her counsel failed to waive the medical privilege. A medical privilege is either waived or it is not. We do not need to address the question of whether, in granting a waiver, a party may not validly condition it upon a reasonable exercise, as for instance requiring that an inspection of books and records be made during office hours, or that a reasonable advance notice be given before an inspection. In this case, if plaintiff's counsel had desired to be present when defense counsel interviewed the doctors, he should have notified defense counsel the *516 privilege was being waived, but requested a reasonable advance notice of any interview so that he could counsel the privilege was being waived, but requested a reasonable advance notice of any interview so that he could be present. A waiver embodying that understanding should then have been executed. We might then have the question of whether Ward had effectively waived the medical privilege under the circumstances she now argues. As noted, however, we do not address this question, because the response of plaintiff's counsel was more ambiguous and uncertain than what she argues was the case.
At the rate plaintiff's counsel was moving, the attorneys might still be writing one another as to whether and under what circumstances defense counsel would be permitted to interview the physicians. Moreover, defense counsel's statements at Ward's deposition show nothing approaching an effective waiver was seriously contemplated.
It is true that Ward did in fact execute a medical waiver on February 16, 1982, about a month following the accident, and at a time when she probably was not represented by legal counsel. After suit was filed on April 27, 1984, it was proper for defense counsel to inquire if the medical privilege was waived. If plaintiff's counsel considered the February 16, 1982, waiver still in effect, he had an opportunity for Ward to so state in her answers to the interrogatories. It is clear he took the position no waiver was in effect.

REDUCTION OF JUDGMENT
Ward argues the circuit judge erred following final judgment in amending the judgment so as to allow credit for sums already paid her by Foster.
Several months prior to trial Foster moved the court to amend her pleadings to plead credit for payments Allstate had paid on her claim. The motion to allow such amendment, together with a post-trial hearing to determine the amount, was sustained at the beginning of trial. A jury verdict for $3,500 was rendered May 28, 1985, and judgment entered thereon. On June 7 Ward moved for a new trial on damages only, denied by court order dated June 21. On that same date a notice of appeal was filed. On June 27 following Foster filed a motion for relief from judgment on the amount paid. Following a hearing on the motion, at which time Ward argued the circuit court had lost jurisdiction because a notice of appeal and appeal bond had been filed, the court sustained the motion, after first ascertaining the appeal record had not been transmitted to this Court. The court granted relief from the judgment by order dated October 31, 1985, crediting the former judgment of $3,500 with $1,691.50, thus rendering final judgment in the amount of $1,808.50.
The circuit court's order was based upon MRCP 60(b)(5), which reads in pertinent part:
Rule 60(b):
Mistakes; inadvertence; newly-discovered evidence; fraud, etc.
On a motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
* * * * * *
(5) the judgment has been satisfied, released or. .. .
* * * * * *
Leave to make the motion need not be obtained from the appellate court unless the record has been transmitted to the appellate court and the action remains pending therein.
The circuit judge clearly had authority to correct his judgment under Rule 60(b)(5), and committed no error in doing so. Prior to the enactment of the Mississippi Rules of Civil Procedure, the perfection of an appeal deprived the trial court of authority to correct judgments. Gatlin v. Cook, 380 So.2d 236 (Miss. 1980); Crocker v. Farmers & Merchants Bank, et al., 293 So.2d 444 (Miss. 1974). The adoption of the Rules of Civil Procedure, however, gave trial courts the authority in certain specified circumstances to correct judgments even though an appeal has been perfected. *517 Brinnon v. Wilson, 485 So.2d 301 (Miss. 1986), held otherwise, and we now recognize our holding in that case to be a misapprehension of the Rule. Therefore, Brinnon v. Wilson is expressly overruled.
We have carefully examined all remaining assignments of error, and find them to be without merit.
There being no reversible error, the judgment of the circuit court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.
NOTES
[1] References are to page number of the deposition, made a part of the record through this Court sustaining a suggestion of diminution of record on July 30, 1986.